PEOPLE v INMAN

1. CRIMINAL LAW—INCULPATORY STATEMENTS—VOLUNTARINESS—
MENTAL AGE.

A question of voluntariness of a confession is decided on the totality of the circumstances; therefore, a 17-year-old defendant's "mental age" of ten years and ten months was not enough, by itself, to render his confession involuntary where he did not come within the classification of "retarded" and was in fact considered "educable" by school officials, where the defendant had obtained a driver's license and must have possessed an ability to sufficiently understand questions which the driver education teacher had read to him, where defendant was able to handle his own money, feed and clothe himself, and travel about town by himself, and where the Court of Appeals found that the defendant was capable of comprehending the meaning and effect of his confession.

2. CRIMINAL LAW—JUVENILES—INCULPATORY STATEMENTS—VOLUN-
TARINESS—RIGHT TO COUNSEL—ADULT ADVISOR.

A 17-year-old defendant's confession was not rendered involuntary merely because it was made in the absence of an adult advisor where the defendant was sufficiently advised of his right to the presence of an attorney or parent.

3. CRIMINAL LAW—INCULPATORY STATEMENTS—VOLUNTARINESS—
HEARING—DEFENDANT TESTIFYING—CREDIBILITY.

The credibility of a defendant, at a hearing to determine the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 29 Am Jur 2d, Evidence §§ 573–576.
Mental subnormality of accused as affecting voluntariness or admissibility of confession. 69 ALR2d 348.
[2] 29 Am Jur 2d, Evidence §§ 574, 1134.
Voluntariness and admissibility of minor's confession. 87 ALR2d 624.
[3, 5, 6] 29 Am Jur 2d, Evidence §§ 582, 584, 585, 587.
Duty of court to institute preliminary investigation as to voluntary or involuntary character of confession. 102 ALR 605.
[4] 5 Am Jur 2d, Appeal and Error § 948.
[7] 21 Am Jur 2d, Criminal Law §§ 219, 484.
47 Am Jur 2d, Jury §§ 72–80.

voluntariness of his confession, was not improperly weighed in light of innocence or guilt despite the judge's statement that he would be giving the defendant a "license to commit crime" if he quashed the confession, where the court also determined that the defendant had the ability to comprehend the proceedings and that he was able to understand his constitutional rights, accepted defendant's statement that he had not been abused, threatened, or promised anything, felt that defendant's mental capacity was sufficient to enable him to make a voluntary waiver of his rights, and held that the people had met their burden of proof to establish that defendant's confession was voluntary.

4. APPEAL AND ERROR—CRIMINAL LAW—CONFESSIONS OF ERROR.

The Court of Appeals is not bound by a prosecutor's confession of error.

5. CRIMINAL LAW—INCULPATORY STATEMENTS—VOLUNTARINESS— HEARING—TRIAL—JUDGES.

No absolute rule prohibits a trial judge from presiding over both a hearing to determine the voluntariness of a defendant's confession and the nonjury trial of the defendant, especially where the defendant raises no objection to the procedure and where the trial judge did not hear anything at the hearing which later was deemed to be inadmissible at trial.

6. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—HEARING—SUA SPONTE ORDER.

Failure of a trial court to *sua sponte* order a hearing to determine whether a defendant was competent to stand trial was not error where the defendant gave no indication to the court that he was unable to understand the trial proceedings or assist defense counsel (MCLA 767.27a; GCR 1963, 786.2).

7. CRIMINAL LAW—RIGHT TO JURY TRIAL—WAIVER.

A defendant's waiver of his right to a jury trial was valid and effective where the trial court explained to defendant the meaning of a jury trial and the effect of waiving the same, read a written waiver and explained it to the defendant, and had the defendant sign the form, and defense counsel presented it to the court (MCLA 763.3).

Appeal from Midland, James R. Rood, J. Submitted Division 3 May 7, 1974, at Grand Rapids. (Docket No. 15989.) Decided June 24, 1974.

Jerry L. Inman was convicted of larceny in a dwelling. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward G. Durance,* Prosecuting Attorney, and *John P. Higgins,* Assistant Prosecuting Attorney, for the people.

*Steven L. Schwartz,* Assistant State Appellate Defender, for defendant.

Before: Allen, P. J., and J. H. Gillis and Quinn, JJ.

Allen, P. J. July 18, 1972, the trial court, sitting without a jury, found defendant guilty of larceny in a dwelling. MCLA 750.360; MSA 28.592. He received a sentence of three years probation and was required to make restitution. He appeals.

Prior to trial, defense counsel filed a motion to suppress as evidence a statement taken by a police officer from defendant shortly after his arrest. Defendant signed a waiver of his *Miranda* rights.[1] His statement was typed by the officer, and defendant signed it. An evidentiary hearing was held pursuant to *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), and defendant's motion to suppress was denied. The statement was subsequently admitted into evidence at defendant's trial.

Both during the *Walker* hearing and on appeal, defendant asserts that he lacked the mental ability to sufficiently understand his constitutional rights and make a voluntary waiver thereof. According to *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), our Court must examine the

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

entire record and make an independent determination on the question of voluntariness. See also *People v Mosley,* 51 Mich App 105, 106–107; 214 NW2d 564 (1974).

The record reveals that defendant had dropped out of high school when he was 16 years old and in the 10th grade. Defendant testified that he could not read nor write, although he was able to write his name. An assistant principal at a junior high school testified that defendant participated in the school's special education program. That program was for "so-called educable students". A counselor at the junior high school testified that a person with a below-70 IQ would be considered retarded. The director of a local mental health clinic testified that defendant's IQ was 75, somewhere between the "mildly retarded" and "dull-normal intelligence" level. He said that defendant's mental age was 10 years, 10 months.

Relying upon *People v King,* 27 Mich App 619; 183 NW2d 843 (1970), and *People v Stanis,* 41 Mich App 565; 200 NW2d 473 (1972), defendant argues that he was unable to make a voluntary confession and waive his *Miranda* rights. Our independent review of the record persuades us to the contrary. Defendant's situation is not as severe as that found in *King, supra,* and *Stanis, supra.* As noted in *Stanis,* the court must look at the "totality of the circumstances" of each case. 41 Mich App 565, 576. *King* referred to *People v Lara,* 67 Cal 2d 365, 381; 62 Cal Rptr 586, 597; 432 P2d 202, 213 (1967), which noted that the admissibility of a 17-year-old's confession was not dependent merely upon age, but should be viewed in combination with his age, intelligence, education, experience, and the ability to understand and comprehend the meaning of his statement. 27 Mich App 619, 623.

While defendant had the mental age of 10 years, 10 months, he did not come within the classification of "retarded" and was in fact considered "educable" by school officials. Although he had failed second and third grades and had left high school while in the middle of tenth grade, we find that defendant was capable of comprehending the meaning and effect of his confession. We note that defendant had obtained a driver's license, and must have possessed an ability to sufficiently understand and comprehend the questions which the driver education teacher had read to him. Defendant was able to handle his own money, feed and clothe himself, and travel about town by himself. In view of these factors, we find that defendant's "mental age" was not enough, by itself, to render defendant's confession involuntary. See 87 ALR2d 624, 625, Anno: *Voluntariness and admissibility of minor's confession,* and 69 ALR2d 348, 350, Anno: *Mental subnormality of accused as affecting voluntariness or admissibility of confession.*

The absence of a parent, guardian, attorney, or other adult advisor does not necessarily mean that defendant's confession should have been excluded. *State v Stewart,* 176 Ohio 156, 159–160; 198 NE2d 439, 442 (1964), *cert den,* 379 US 947; 85 S Ct 443; 13 L Ed 2d 544 (1964), held that the law does not require a finding that "any confession made by a person who is not yet 18 years old is involuntary unless one of his parents or his attorney is present". *Gallegos v Colorado,* 370 US 49, 54–55; 82 S Ct 1209, 1212–1213; 8 L Ed 2d 325, 329 (1962), while reversing a 14-year-old boy's conviction on the grounds that his confession was involuntary, noted that there was no specific "guide to the decision of cases such as this, except the totality of circumstances" involved in each particular case. In

the instant case, defendant was arrested late in the afternoon and signed his statement shortly after 6 p.m. The police officer testified that he advised defendant of his right to an attorney, and asked defendant whether or not he desired to have a relative or a parent present. Defendant replied to the effect that he did not want anything to do with his parents, stating "I got in this myself, I will get out of it myself". While defendant initially stated on direct examination that he was never told of his right to have counsel appointed, he was later on cross-examination unsure as to whether or not the police officer so advised him, and testified that no promises or threats had been made to him. Based upon the "totality of circumstances" present in this case, we find that defendant's confession was not rendered involuntary merely because of the absence of an adult advisor, and find that defendant was sufficiently advised of his right to the presence of an attorney or parent.

According to *People v Hummel,* 19 Mich App 266, 271–272; 172 NW2d 550 (1969), *lv to app den,* 383 Mich 793 (1970), it is reversible error for a judge presiding at a *Walker* hearing "to weigh defendant's credibility in light of his innocence or guilt". At the conclusion of the hearing held in the instant case, the court said:

"If I were to quash these confessions in this case I'd be giving these boys a license to commit crime, because the next time they get involved, if they do they will have the same defense, we aren't responsible, we don't understand."

The trial court's opinion was not limited merely to the above. It was determined that defendant had the ability to comprehend the proceedings and that he was able to understand his *Miranda* rights.

The court accepted defendant's statement that he had not been abused, threatened, or promised anything. The court felt that defendant's mental capacity was sufficient to enable him to make a voluntary waiver of his rights, and held that the people had met their burden of proof to establish that defendant's confession was voluntary. We find that the trial court's statement does not come within the strictures of *Hummel,* and that defendant's credibility was not weighed in light of his innocence or guilt.

Defendant contends that the trial court committed reversible error in presiding over both the *Walker* hearing and the nonjury trial held subsequent thereto. At oral argument, the prosecutor confessed error on this issue but stated that it is for the Court to determine whether the error was of such magnitude to be reversible. We initially note that we are not bound by the prosecutor's confession of error. *People v Bosanic,* 28 Mich App 234, 236; 184 NW2d 255 (1970). Our Court has generally held that in such a situation, error has not been committed. *People v Yacks,* 38 Mich App 437, 441–442; 196 NW2d 827 (1972). No absolute rule prohibits a trial court from presiding over both the *Walker* hearing and the nonjury trial, especially where defendant raises no objection to that procedure and where the trial court did not hear something at the *Walker* hearing which later was deemed to be inadmissible at trial. See *People v Boyd,* 49 Mich App 388, 403–404; 212 NW2d 333 (1973), *remanded,* 391 Mich 779 (1974) and *People v Powell,* 53 Mich App 306; 218 NW2d 763 (1974).

We find that the error, if any, was harmless. First, it has in effect been determined that the act of the trial court presiding over both the *Walker* hearing and nonjury trial is not "so offensive to

the maintenance of a sound judicial process that it never can be regarded as harmless". Second, we find that the error was harmless beyond a reasonable doubt. See *People v Mobley,* 390 Mich 57, 65; 210 NW2d 327 (1973), and cases cited therein. Defendant has been unable to show how he was prejudiced, and no miscarriage of justice is present in this case. MCLA 769.26; MSA 28.1096.

We find that the trial court did not commit reversible error by failing to *sua sponte* order a hearing pursuant to GCR 1963, 786.2 and MCLA 767.27a; MSA 28.966(11), to determine whether or not defendant was competent to stand trial. Defense counsel made no request for such a hearing, and defendant gave no indication to the trial court that he was unable to understand the trial proceedings or assist defense counsel. In this situation the trial court had no duty to *sua sponte* order a competency hearing. *People v Allen,* 34 Mich App 650, 651; 192 NW2d 63 (1971). See also *People v Boyd,* 49 Mich App 388, 393; 212 NW2d 333 (1973).

Defendant argues that he did not make an effective waiver of his right to a jury trial. At the beginning of trial, the court had before it defendant's written waiver of his right to a jury trial. MCLA 763.3; MSA 28.856. The trial court explained to defendant the meaning of a jury trial and the effect of waiving the same. The court then read the written waiver, and explained it to defendant. The court then had defendant sign the form, and defense counsel presented it to the court. Defendant's waiver of his right to a jury trial was "valid and effective". *People v Jones,* 36 Mich App 150, 151; 193 NW2d 197 (1971).

Affirmed.

All concurred.