# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RAYMOND CHARLES PIERSON,

      Defendant-Appellant.

FOR PUBLICATION
September 12, 2017

No. 332500
Washtenaw Circuit Court
LC No. 10-001241-FH

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

BOONSTRA, J. (*concurring in part and dissenting in part*).

Throughout any juror's courtroom experience, a trial judge makes innumerable rulings on the admissibility of evidence. Sometimes those rulings are made in the presence of the jury; sometimes they are made outside the presence of the jury. But either way, they are rulings that are necessary to the conduct of a trial, and jurors are properly made to understand that. Both at the outset of a trial and at its conclusion, juries are therefore generally instructed regarding what constitutes evidence, the judge's role in determining admissibility of evidence, and the jury's role as factfinder and weigher of credibility.

It is in this context that we must evaluate the issue presented in this case. Before trial, defendant moved to suppress his alleged (and allegedly unprompted) statement to police officers that "I broke into the house but the guy had the gun." The trial court held a *Walker*[1] hearing, and determined that the statement was admissible.

At the outset of the trial, the trial court delivered its preliminary instructions to the jury, including that statements of attorneys are not evidence, that the jury must decide the case based only on the admitted evidence, that the jury was ultimately responsible for determining which witnesses or portions of witness testimony to believe, and that the trial court's rulings on objections to statements made by witnesses were based on the law and were not meant to reflect the opinion of the court on the facts of the case. The jury affirmed that it would follow the trial court's instructions.

---

[1] *People v Walker* (*On Rehearing*), 374 Mich 331; 132 NW2d 87 (1965).

-1-

Among the witnesses who testified at trial was one of the officers in question, and among the subjects on which he was questioned was the statement that the trial court had determined at the *Walker* hearing to be admissible. During the prosecution's redirect examination of the officer, the following colloquy occurred:

> *[Prosecutor]*. Okay. Now, in terms of the statement that the defendant made to you, let me back up. I believe on cross-examination you said you didn't question [defendant].
>
> *[Officer]*. That's correct.
>
> *[Prosecutor]*. And I believe in terms of your testimony, you said he told you he was breaking into the apartment but that the guy pulled a gun on him; is that correct?
>
> *[Officer]*: Yeah, that the guy had a gun.
>
> *[Prosecutor]*: The guy had a gun. Now, can you explain when you give *Miranda*[2] rights?
>
> *[Officer]*: Anytime someone's not free to leave.
>
> *[Defense counsel]*: Foundation.
>
> *The Court*. You know what, I'm going to cut that part of it off here. The Court already held a hearing on this matter and I have ruled that the defendant was properly advised of his rights and that the statements that have been introduced are admissible. Go ahead.
>
> *[Defense counsel]*. I'll object to that.
>
> *The Court*. Fine. Go Ahead. It's true. Have a seat. Go ahead.

Shortly after this exchange, and during defense counsel's recross-examination of the officer, there was the following exchange:

> *[Defense counsel]*. You appreciate the Court has ruled that statements by
>
> my client are admissible, correct?
>
> *[Officer]*. I don't—
>
> *[Defense counsel]*. He just said it. The Judge just said that.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*[Officer]*.  The Judge said it.  I don't know if I appreciate it.

*[Defense counsel]*.  Okay.  So my client gave a statement to you—

*The Court*.  You know what, that doesn't matter either.  So go ahead.

Defense counsel further elicited testimony from the officer that defendant's statement was not written down or recorded at the scene, but instead was written in the officer's report hours later.  Defense counsel also pointed out inconsistencies between another witness's testimony regarding her statements to the officer that night and the statements that the officer had recorded in his report.  During closing arguments, defense counsel reminded the jury that it could choose to disbelieve the officer's testimony regarding defendant's statement.

At the conclusion of the trial, before the jury began its deliberations, the court further instructed the jury, and again instructed them, inter alia, that it is the judge's role to determine what evidence is admissible, that it is the jury's exclusive role to determine the facts and to weigh the credibility of witnesses, that it was for the jury to decide which witnesses to believe (either in whole or in part), and that in doing so it should assess the testimony of police officers using the same standards by which it evaluated the testimony of other witnesses.  Finally, the jury was instructed that the trial court's comments and rulings were not evidence.  Among the instructions given were the following:

> It's your job and no one else's . . . to decide what the facts of the case are, and to do that you have to decide which witnesses you believe and how important you think their testimony is.  You don''t have to accept or reject everything a witness told you.  You are free to believe all, none, or a part of any person's testimony.

> \* \* \*

> When you discuss the case and decide on your verdict, you may only consider the evidence that has been properly admitted.  Therefore, it's important for you to understand what is evidence and what's not.  Evidence in this case includes only the sworn testimony of the . . . [parties'] witnesses, and the exhibits which were admitted into evidence.

> \* \* \*

> My comments, my rulings, indeed these instructions are also not evidence.  It's been my duty to see to it that the trial was conducted according to the law and to tell you the law that applies to this case.  But when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case.  Indeed, if you believe I have an opinion about how you should decide this case, pay no attention to it.  You are the judges of the facts in this case, not me.  At times during the trial, I excluded evidence or sustained objections.  Don't consider those things in deciding the case.  Make your decision only on the evidence that I let in and nothing else.  As I said, your decision should be based on all the evidence regardless of which party presented it.

-3-

\* \* \*

Now, as I said, it's your job to decide what the facts of the case are, and to do that you have to decide which witnesses you believe and how important you think their testimony is. You don't have to accept or reject everything a witness told you. You are free to believe all, none, or a part of any person's testimony.

\* \* \*

You've heard testimony from witnesses who are police officers. That testimony is to be judged by the same standards you used to evaluate the testimony of any other witness.

The lead opinion holds, notwithstanding the trial court's instructions to the jury and the inherent role of a trial court in determining the admissibility of evidence, that it was error (albeit harmless error) for the trial court to reference in the presence of the jury that it had already ruled that the statement in question was admissible. I respectfully disagree and therefore dissent from the lead opinion's analysis and finding of error.

The trial court in this case held a *Walker* hearing to determine whether defendant's statement was voluntary. The purpose of a *Walker* hearing is to protect "the defendant's constitutional [due process] right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." *Jackson v Denno*, 378 US 368, 376-377; 84 S Ct 1774; 12 L Ed 2d 908 (1964) (citation omitted).[3] This right remains protected at trial if the jury is limited to considering the "weight and credibility" of the statement, i.e., if defendant is free to argue, and the jury is free to conclude, that the statement was not made or was not true. *Walker*, 374 Mich at 337. A *Walker* hearing thus is an evidentiary hearing held outside the presence of the jury on the issue of the voluntariness of a confession or incriminating statement. If the trial court determines that a statement to have been voluntarily made, then the statement is admitted into evidence at trial. However, "[t]he issue of voluntariness is not submitted to the jury. Jury consideration is limited to its weight and credibility." See *Walker*, 374 Mich at 337-338; *People v Britt*, 37 Mich App 175, 177; 194 NW2d 528 (1971).

The lead opinion correctly states that we have held that it is error for a trial court to inform a jury that it has determined that a defendant's confession is voluntary. In *Walker*, our Supreme Court stated that once a trial court has ruled a defendant's statement to be admissible, the jury's "determination should be limited to truthfulness, i.e., weight and credibility;" in other words "the jury may still consider its evidentiary weight." *Walker*, 374 Mich at 337-338. And in *People v Gilbert*, 55 Mich App 168; 222 NW2d 305 (1974), this Court noted that a trial court's

---

[3] Put another way, the trial court in a *Walker* hearing does not consider whether a challenged confession or incriminating statement is credible (such as by considering corroborating evidence), but only whether a defendant's right not to be convicted based on a coerced confession has been protected. See *Jackson*, 378 US at 376-377.

-4-

ruling that a defendant's statement was admissible "merely placed the confession on an equal footing with all other properly admitted evidence[,]" leaving the defendant "as free as he was before the *Walker* hearing to familiarize the jury with the circumstances that attended the taking of his confession, including facts bearing on voluntariness, to impeach its credibility or to challenge the fact that it was ever given at all." *Id*. at 172. Further, this Court in *Gilbert* stated:

> After such evidence has been admitted, the trial judge may instruct the jury that they should determine, on the basis of all the relevant evidence, 1) if the confession was made, and 2) if they so find, they should decide if the statement is true.
>
> The trial court should not, as happened in this case, go on to discuss anything more. For, to inform the jury of the existence, nature, and results of a *Walker* hearing not only makes it unlikely that the jury will thereafter decide the confession was never made, . . . but it also tends to unfairly discount the credibility of defendant's impeaching evidence, especially that properly admitted evidence that relates to voluntariness. [*Id*. at 172-173 (citation omitted).][4]

In my judgment, the trial court did not err by merely noting that defendant's statement was found to be admissible. After all, a jury is surely aware that the evidence that is submitted to it has either been found to be admissible or is so clearly admissible that no party has argued against its admission. Unlike in *Gilbert*, the trial court in this case did not inform the jury that it had determined that defendant's statement was voluntary or speak at length about the circumstances surrounding defendant's statement so as to potentially influence the jury's determination of whether the statement had in fact been made and whether it was true. Indeed, the trial court in *Gilbert* stated that it had evaluated "the duration and conditions of detention, the attitude of the police officers, the physical, mental state of the accused, the diverse pressures that might sap the accused's strength and so forth" in a separate evidentiary hearing. *Gilbert*, 55 Mich App at 172. The trial court in *Gilbert* thus invaded the province of the jury by imparting to the jurors its own assessment of the credibility of the witnesses, and "crippled the defendant's ability to challenge a confession." *Id*. at 173.

By contrast, the trial court here did no such thing. It instead merely stated that it had ruled that defendant's statement was admissible, and it thereby cut off both the prosecution's and defense counsel's attempts to further explore the circumstances under which defendant was advised of his *Miranda* rights. Those circumstances relate to a subject matter that is within the province of the court, rather than the jury. They relate to whether the defendant was properly advised of his rights and whether he knowingly and intelligently waived those rights and otherwise voluntarily made the statement, such that evidence of his statement was properly admitted for the jury's consideration. See *People v Godboldo*, 158 Mich App 603, 605; 405 NW2d 114 (1986); see also *People v Akins*, 259 Mich App 545, 564–565; 675 NW2d 863

---

[4] As noted, the jury is therefore entitled to assess the admissible evidence surrounding the making of the statement, but is not asked to determine whether it was made voluntarily. *Walker*, 374 Mich at 337-338.

(2003). The trial court's statement and its limiting of the questioning regarding defendant's *Miranda* rights did not, however, in any way render defense counsel unable to challenge the credibility of his statement, or even its existence. See *Gilbert*, 55 Mich App at 172. Indeed, the trial court's statement and ruling imparted no assessment of whether the officer's testimony regarding defendant's statement was credible, or indeed whether the statement was made at all. Defense counsel in this case thus remained free to impeach the credibility of the officer or challenge whether the statement was even made, *Gilbert*, 55 Mich App at 172, and he in fact did so at trial by challenging the officer's testimony, pointing out inconsistencies in the officer's report and the testimony of another witness, and eliciting testimony regarding defendant's mental state at the time he gave the statement, including testimony from the officer that shortly before the statement he had pointed his service weapon at defendant. And, again, the trial court repeatedly instructed the jury that it was the ultimate determiner of credibility and of the facts of the case.

Unlike the lead opinion, I do not find the distinction between "admissibility" and "voluntariness" to be merely one of "splitting hairs." Nor is the distinction one, in my judgment, that lay jurors are unable to appreciate. I give them more credit than that. Indeed, in our common parlance, the distinction between "admissibility" and "voluntariness" is clear.[5]

But the jurors were not confronted with that distinction in this case. The trial court merely said that the statement was admissible. It said nothing about voluntariness, about the basis for its finding of admissibility, or about the credibility the witnesses or the weight to be given to the statement or any other piece of evidence. It hardly imparted to the jury, as the lead opinion posits, that it had "already engaged in some manner of extraordinary analysis of the propriety of the confession and arrived at a conclusion unfavorable to the defendant." No, it properly ruled upon the admissibility of the evidence, and left to the jury the evaluation of the evidence. And in the context of the trial court's instructions to the jurors, they surely were made to understand that, irrespective of the court's determination that the statement was admissible, it was solely within the purview of the jurors themselves to assess the credibility of the witnesses and the weight to be given to the statement and the other evidence admitted at trial.

I concur with the lead opinion that the trial court's denial of defendant's postconviction motion for relief from judgment should be affirmed. However, I would hold that the trial court's comments regarding the admissibility of defendant's statement did not constitute even harmless error.

/s/ Mark T. Boonstra

---

[5] For example, *Merriam Webster's Collegiate Dictionary* (11th ed) defines "admissible" in relevant part as "capable of being allowed or conceded", and "voluntary" in relevant part as "proceeding from the will or one's own choice or consent."